Houston VA over-prescribed renal methoxic drugs to veteran Scotty LeVias, causing him to have a total kidney failure, then failed to treat his kidney. We can't hear you. I'm sorry, Your Honor. It's probably not your fault, but the sound in this courtroom today is not what you'd call ideal. So you just need to be aware that you need to speak up and be clear. Yes, Your Honor. May it please the Court. Good. The Houston VA over-prescribed renally toxic drugs to veteran Scotty LeVias for years, causing total kidney failure. The VA also failed to treat his kidney disease for years. When the LeVias' sought justice, they did exactly what the FTCA requires. They timely presented an administrative claim for medical malpractice at the Houston VA for urinary and bladder problems, then timely amended the claim to include every legal theory presented in their federal lawsuit. Both claims administratively were for medical malpractice at the same Houston VA. Both medical malpractice claims were for the failure to diagnose or treat urinary symptoms. Both claims involved the same hospital, the same set of medical records, in the same timeframe with the same providers. Now this Court must decide whether it will follow its own precedent in RISE and France and give this veteran his day in court or allow the VA to escape accountability despite having full, complete pre-suit notice. Well, I understand that's the theory of your case. But if you look at the 2021 claim and the 2023 claim, there's no overlap other than the fact that kidneys were implicated or there were symptoms that were similar. The 2021 claim was all about the spinal compression. And I mean, I don't know how that puts the VA on notice because they surely don't have the obligation, they do have the obligation to investigate, but not to investigate everything in the medical file that might be a cause of this. That's not what the law is. No, Your Honor. Respectfully, the 2021 claim in the record at page 128 states a claim for injuries concerning urinary hesitancy, incontinence, accidents, bladder problems. All symptoms of the spinal compression. And that was the focus of that claim. Your Honor, the claim also states a claim that as a result of the negligence of physician and staff at the VA in Houston, that he suffered physical pain, damages, mental anguish, all the claims that he presented in the suit. All of those claims are preserved. Similar to the way this court allowed claims to be presented in RISE, which is the suit. But RISE, it was about the transfer from one hospital to another, right? The transfer was mentioned in that first claim. The transfer was sort of the gravamen of what all came after, and it was more focused in the amended claim, but it was still at issue in both. That's not the case here. No, Your Honor. In RISE, the plaintiffs never presented anything about the transfer being a source of negligence at all in the administrative claim. In RISE, the only fact presented in the administrative claim, there was only one in RISE, was that the patient was immediately transferred to South Fulton Hospital. This court held that that was clearly sufficient to add a claim in the trial court for the first time of a negligent referral to a hospital that lacked resources to treat a patient. So how general need one be? Because apparently an effect of the spinal compression is interference with the bladder. So all of the symptoms that you noted are interference with the bladder, which derives directly from the spinal compression. Renal insufficiency is the kidney, not the bladder. Two different parts of the excretory system, and that is the part that got poisoned by the NSAIDs. Yes, Your Honor. So what put the VA on notice, and believe me, I am not sympathetic to the VA here, what put them on notice of over-prescribing NSAIDs in 2021, which they continued to do for three more years, right? Yes, Your Honor. As the court points out, the VA continued to prescribe NSAIDs well beyond when Mr. Leviass... So they obviously didn't know. The Leviasses did not know at the time they presented their 2021 claim of the true cause of this kidney disease. Well, wait a minute. Wait a minute. I'd like you to answer Judge Jones's question first. What put the VA on notice in the 2021 claim that over-prescription of the NSAIDs was a cause of damage to kidneys when we're talking about bladder incontinence and all those things and spinal compression? Your Honor, what put the government on notice in the 2021 claim was complaining of injury to the urinary system, urinary hesitancy, incontinence, abstinence, nocturia. So your position is that that level of generality gave rise to the VA a duty on the VA's part to investigate kidneys, bladder, anything related to urinary, anything related to the kidneys, anything related to drug interaction with the kidneys. Yes, Your Honor. And our... RISE doesn't support that. Your Honor, I respectfully would submit that in RISE and in France, this court has stated that claims are deemed to be constructively presented, even if they are not in the four corners of the administrative claim, as long as the government could have reasonably discovered it in its investigation. Here's why the government should have discovered that kidney disease was related to urinary incontinency, hesitancy, abstinence, and problems that Mr. Levias was having. First, I would point the court to the diagram of the urinary system that we provided in docket 30 on page 10 of our reply brief. We're not talking about separate body systems. We're talking about the urinary system. The kidneys are part of the urinary system. When Mr. Levias was treated in 2019 and 2018 at the Houston VA, those providers were the ones over-prescribing incense for his back pain. When he went in for back surgery in February of 2019... Does the 2021 claim mention kidney, kidneys? It mentions the urinary system, Your Honor. Does it mention kidneys? It does not. Well, you mentioned to Judge Jones that the Leviases didn't know in 2021 about the over-prescription of the incense, but they had requested their medical records in October of 2020, correct? And they got the medical records in November of 2020. Yes, Your Honor, but this court in Harrison v. United States found that just the mere suspicion of medical malpractice taking place is not enough to cause the statute of limitations to run. Well, maybe not, but the medical records clearly disclose that there were concerns with the kidneys, there were issues with kidney function as early as 2017, 2018, correct? Not to Mr. Levias, Your Honor. In fact... What do you mean, not to Mr. Levias? Mr. Levias was not told that he had kidney disease in 2017. Don't the medical records indicate, though, concerns between the interaction with the incense and his kidneys? Not in 2017, Your Honor. When they got the medical records in 2020. You don't dispute that the medical records were obtained in November of 2020, do you? I do not dispute they obtained his records in November of 2020. But don't those records indicate the connection between the incense and the kidney disease? Your Honor, it's unbecoming for this court to require Mr. Levias to know better than his own doctors who continued giving him incense through December of 2020. That's not what the court is doing at all. The court is trying to ascertain what the record is, but you said the Leviases didn't know there was any connection. But by that time, there had been a prescription that wasn't refilled, I think in, what, 2018, because of kidney function and the interaction of the drugs. There had been some remark in 2017, I guess, about incense and kidney function. And if I'm remembering correctly, again, there was a declining kidney function along these times. And then you get the medical records in the fall of 2020, yet kidneys are not mentioned in the 2021 claim. In the fall of 2020, Your Honor, the VA continued prescribing incense to Mr. Levias. He had absolutely no reason to believe his doctors were giving him renally toxic medication that was contraindicated. So the complaint details the package inserts for all of these drugs. Did they get the package inserts when they got the drugs throughout 2013, 14, 15, 16, 17, 18? Not necessarily, Your Honor. Did they get them or not? No, because some were given to him intravenously. Put that aside. But some of them were prescribed to him, and he went and picked them up, ibuprofen, for example. But there were other drugs. And the complaint details these package inserts that, in all caps, very bold face, these are toxic to the kidneys, or these are nephrotoxic, or whatever. Well, for what it's worth, in August 2020, some VA providers said that the kidney problem was attributable to diabetes and hypertension. Yes, Your Honor. For what it's worth, when Mr. Levias asked his doctors in the record at page 189 for the exact cause of his kidney disease in August of 2020, he was told by his doctors it was caused by diabetes and hypertension, not by overprescription of NSAIDs. And Mr. Levias continued to receive NSAIDs from the VA in the fall of 2020 through December of 2020. But at some point, there is a duty to investigate that arises. You have, a suspicion may not be enough, but facts that cause you to investigate or go seek professional advice in the medical malpractice claim, that is when a claim accrues. Your Honor, under Kubrick, this claim could not have accrued for NSAIDs any earlier than April of 2021. That is the first time anywhere in the medical record that Mr. Levias expresses any connection between NSAIDs and kidney disease. But by then, he had already told his statute of limitations by presenting a medical malpractice claim in January of 2021. Well, only if it relates back, only if the 2023 claim relates back to the 2021 claim, correct? Correct, Your Honor. And this one does. But even when he requested his medical records in October of 2020, he mentions the NSAIDs and wanting the drugs, the list of drugs and kidney. No, Your Honor, he does not mention NSAIDs. I thought he did. He mentions medication. That's correct. Well, medication.  But again, under Harrison, this Court's holding in Harrison is not that merely asking for medical records or having a mere suspicion of medical malpractice does not start the statute of limitations. Even if it did, Mr. Levias preserved his statute of limitations in January of 2021 under Reyes in France. In France, that claimant presented for the first time after suit was filed, new claims for an informed consent problem at the Dallas VA. That involved a surgery for a deviated septum. There were claims that the surgery led to a loss of vision in the patient. There was nothing mentioned administratively at all about informed consent. And only after the statute of limitations had run, when the plaintiff filed their third amended complaint in the lawsuit for the very first time, this Court allowed an informed consent claim to be added. The reason the Court allowed that is because this Court held that the administrative claim was sufficient notice as long as it provided sufficient facts for the government to investigate. What's important for the Court to understand is that once that administrative claim is presented, the burden shifts to the government to do its own investigation. The government was always in a superior position to Mr. Levias to do an investigation. The government had all of Mr. Levias' VA medical records. The government had access to talk to all of Mr. Levias' medical providers and ask them questions. Mr. Levias could not do that. He couldn't take depositions at this stage. He could not consult with his physicians beyond appointments that he had, but the VA and government could. The VA was always in a superior position to do that investigation. And in France, this Court held that it was enough to trigger that investigatory duty when a plaintiff gives a date, location, and description of the injury. Here, the injury is an injury to the urinary system. And this Court noted in France that in box 11, which is the box on the form 95, which is in the record at page 128, if the Court wants to reference it, in box 11, it asks for which witnesses are relevant. This Court in France noted that that claimant listed all medical personnel at the Dallas VA. Mr. Levias listed all medical personnel at the Houston VA in his 2021 form 95. His 2021 form 95 alone, as long as it provided notice that he had urinary symptom problems that were not diagnosed and treated, and that he was complaining of medical malpractice at the Houston VA, listing all providers in this timeframe, that triggers the government's investigatory duty. I just think your problem is that you're envisioning some writ large duty to investigate the entire dossier of the patient. But you know, you don't mention the word kidneys in that 2021 claim. His request in October of 2020 actually mentions renal. He wants renal visits, renal records, medications, all meds current and past. I mean, you know, I just, I just don't read RISE as expansively as you do. Perhaps you're right and I'm wrong, but I'll study it. Not only is RISE this expansive, but France is also that expansive, Your Honor. Both RISE and France allowed claimants to present for the very first time in federal court, claims that were never presented administratively. This case, in the Levias case, Mr. Levias presented robustly and fully in his amended claim, every single. But then why do we even have the relation back doctrine? Why even did you need to file the amended claim? Your Honor, Mr. Levias needed to file the amended claim because there was an initial denial of his medical malpractice claim. And under the CFR that allows claimants to request reconsideration, it's 28 CFR 14.9B. That requires claimants to include additional, Your Honor, I see I'm out of time. May I answer your question?  That requires claimants to provide additional supplemental information. It invites new evidence. It invites new facts. That is the system created by Congress, and that is what Mr. Levias did. But there's a distinction between new facts and new claims altogether. This was always a medical malpractice claim, Your Honor. He provided additional facts and more information as required under the CFR. Excuse me. Thank you. You have a chance for rebuttal, Ms. Parker. Good morning, Your Honors. Lisa Luce Parker for the United States of America. May it please the Court. The NTCA required the Leviases to be reasonably diligent in bringing their medical malpractice claim within the two-year statute of limitation. Once they were armed with the critical facts underlying this lawsuit, which was that Mr. Levias was injured by the renal failure treatment and the causal connection between the VA's treatment and that injury, they had two years to either bring an administrative claim or seek professional advice to determine whether to do so. Despite their own allegations showing that the Leviases were aware of the critical facts by August of 2020, they waited until 2023 to present the administrative claim. There are three reasons why the District Court properly held that this claim is untimely and dismissed the lawsuit. First, as the District Court found at the latest, the Leviases knew about the connection. Why don't you call them Levias since their counsel does? Levias, sorry. I had written it down. I understand. I wasn't sure, but I was corrected. So the Leviases knew by August 2020 that there was a causal connection between the renal failure as well as the VA's treatment. Is that when the podiatrist told them it might be related? Because they were told lots of things. And I do think it's quite compelling. I mean, you're expecting a patient to know more than the doctors. It's sort of almost a Keystone Cops thing going on according to what they allege in their complaint. I mean, they were told all sorts of things. So how were they supposed to know? To be clear, Your Honor, the August 2020 statement that the provider made to them, he stated that his diabetes and hypertension could be contributory to the kidney failure. Well, that's not NSAIDs. Yes, that's correct, Your Honor. The VA had never made any references to the NSAID, which I think goes to the merits, as opposed to whether they misled them, which is what they are claiming is the basis of their argument, that the VA had misled them or had concealed the facts. But that one statement, which is the basis of their argument, shows at most that it was a suggestion of an alternative cause for the renal failure, but it does not arise to the intentional concealment that is required to either equitably told or to even state or argue that they were misled by the VA. So what are you saying about the date of August 2020? He was on notice of what? He was on notice of the causal connection between the VA's treatment of the renal failure and his chronic kidney disease. That is indicated because they both made statements to the VA. But what does that show? Because what that shows is that, I mean, the VA isn't responsible for diabetes or hypertension. I mean, I thought he had to know that he had known about kidney problems for several years at that point, so the relevant date is when he knew of the involvement of the painkillers in it, right? What is that date? Under Kubrick, the date in which he should have known the government's position that it was in 2018, but Kubrick also recognizes that if the patient has not made the causal connection themselves, they still have to be diligent in seeking professional advice. What were the moments where their nucleus of facts, where their operative facts were known or discovered or should have been discovered by them? It would have been May 2018. And that was when what happened? Was that when he was hospitalized for the kidney problems or was that when the prescription was not renewed? That's when the VA provider told him directly that he should not be taking NSAIDs. And at that point, by May 2018, he had his hospitalization in September of 2017 for acute kidney injury, which would dispute their contention that he was not aware of any kidney injury by then, when in fact, he was actually hospitalized by September of 2017. As well as during that same timeframe, a doctor had recommended to Mr. Levias not to take Suledac. So he's told this in May of 2018, but they continue to prescribe NSAIDs to him. Multiple prescriptions of NSAIDs.  So what's a patient supposed to do? I disagree with that contention because specifically, it is true and the allegations show that the VA did prescribe him with long-term prescriptions of ibuprofen and Suledac from the period of 2012 to 2017. Once he had that hospitalization for the kidney, those prescriptions had stopped. But they restarted. In other words, the allegations, as I apprehend them, are that the prescriptions continued to 2024. They continued because he was giving NSAIDs during hospitalizations for back surgery and other serious hospitalizations involving surgery. The fact that the VA did give him NSAIDs during those hospitalizations, there's nothing in the allegations that the VA continued these long-term prescriptions like they did in 2012 to 2017, that he should have taken ibuprofen up to three times a day. Well, how are we or how is he to know that those couldn't have aggravated it? I mean, the man continued, his kidneys continued to deteriorate. I think that's the fact in which he should have known. If he hadn't actually made the connection himself with actual knowledge, he should have sought professional advice under the Cooper standard. Well, he did, and the VA told him, well, it might be hypertension and diabetes. I mean, in other words, where was he supposed to seek professional advice? He doesn't have to hire an expert at that point and go do sort of the reverse investigation that counsel opposite is saying the VA was required to do. Well, Your Honor, he was able to seek professional advice regarding the Cauda Equina claim, which he presented in 2021. Yeah, and then it took him a year and a half to operate on that while the man is under very serious pain. That's a real positive statement for your side. In general, Your Honors, I think that August 20, the 2018 was, or I'm sorry, the 2018 date is in which Mr. LaVias should have sought that professional advice. But even if the court does not accept that date, the district court got it right by saying August 2020 is when they showed actual knowledge that they had made a connection between the medications and the worsening kidney injury. So you're not talking about the podiatrist at that point. You're talking about the LaVias' actually asking or saying, I'm dissatisfied with his kidney treatment, dissatisfied with the treatment. There's a connection between this or something like that. I mean, is that when that happened, August 2020? Your Honor, yes. And in fact, the LaVias' are arguing that the VA had misled them. But the record also shows that by April 2021, Mrs. LaVias had told the VA again that she was dissatisfied with treatment. And she even told the VA that she believed that the NSAIDs had worsened his kidney disease. So regardless of any arguments that the LaVias' have made that they were misled or the VA led them astray, they continue to believe that the NSAID medications were causing his renal failure. All right. So is that established in the pleadings? This is a Rule 12 dismissal, correct? Is this not the province of discovery and summary judgment? Because this is all based on the allegations in the complaint, including the April 2021 date, which is attached to a medical record that was submitted to the district court for review in the motion to dismiss. So because it is... Well, but the medical records weren't in the complaint itself, correct? Correct, Your Honor. But they were referred to throughout the allegations. So you don't need to look at the medical records. The April 2021 date just further shows that they had already continued to believe or theorize that the NSAID medications were causing the renal failure. But their claim is timely if the 2023 claim, amended claim, relates back to the 2021 January claim. If the court were to adopt the August 2021 date, and if that 2023 claim did actually relate back to the 2021 claim, yes. But in the past year, the 2023 claim did not relate back to the 2021. And I want to address statements made by the Levis City Council, in which they stated that RISE supports the position. Actually, RISE, the Fifth Circuit, this court specifically stated in RISE that the later amended complaint related back to the first administrative claim because it was within the chain of events. So in that case, the first administrative claim specifically cited to a transfer that the deceased's spouse had been conducted by the Army Hospital to a civilian hospital. That fact was in the 2021. I'm sorry. That fact was an administrative claim in RISE. As a result, this court held that that was enough sufficient notice to the agency in order for them to later amend their theory of liability to say that it was a negligent transfer that was the central claim in that lawsuit. Here, there's a similar fact that was included in the 2021 claim that would have given the VA notice that there was a complaint regarding... So they filed this administrative claim in January 2021, and there are urinary tract issues that are described there. I tend to agree that this claim was about the spinal compression and back and how those symptoms related to that. But this kidney problem in the insides is sort of a blinking red light in the medical records. Why in the world couldn't the VA look at that and see what that was? I mean, doesn't that fall within the duty of the agency to do the investigation and maybe make the connection? Because at least by the time you're investigating in 2021, after the January 2021 claim, by the time you're investigating that, several doctors have said, well, you shouldn't take NSAIDs. This could be complicating your kidney disease. You've got the kidney hospitalizations in his medical records. I mean, again, we're putting all the onus on the patient here when the agency should maybe see the red flags in their own records. That is not required by the statute. Well, it is required by your duty to investigate, is it not? The duty to investigate, as long as recognized by RISE, sufficient facts have been presented to the agency to thoroughly investigate the claim so that they could enter into any settlement terms or into any settlement processes. I was going to ask about that. So the claim wasn't settled, though. It was just denied. Correct. That's because the claim in the 2021 claim was denied because the VA, while looking at their medical records, they had hired an independent medical reviewer to determine that there was no fault on the VA, and they denied. And that's when the leviases had submitted a motion for reconsideration. And along with that, they submitted another SEF-95, which is an administrative claim form that they characterized as an amendment. And through the amendment, they didn't actually amend their first initial claim on the CAUTA equina diagnosis for the back surgery. Instead, they just tried to backdoor the renal failure claim and added new facts to that 2021 claim. And I would like to address the council's argument regarding the regulations. Regardless of whether the regulations allow for an amendment, the language of the regulations actually provides that in order to properly present a claim to the agency, it has to state the incident as well as any money damages related to the incident. Here, the incident was a CAUTA equina diagnosis along with the 2019 back surgery. The kidney treatment and the NSAID prescriptions was never the incident in the 2021 claim. Therefore, even under the regulations, they couldn't just amend it. I mean, from this standpoint, he'd had this compression in his spine for a long time, right? Wasn't that why he'd been taking pain medication since 2012? I'm not sure if the record actually reflects that. The complaint does mention that the medication was given as a result of chronic pain. Chronic pain. Well, I assume that's back pain. And so this compression apparently existed for six or seven years before it was diagnosed. And therefore, you have both things working together to create the situation that you have the compression on the one hand causing back pain, but you also have the long-term administration of the drugs to ameliorate the back pain that is messing up with the kidneys. So they really are integrated in their cause. And it seems more than likely that an astute medical evaluation would have tied those things together when they filed the claim in 21. Not under the facts actually included in the 2021 claim, Your Honor. Because the 2021 claim specifically noted that the VA was negligent in failing to timely perform emergency lumbar decompression surgery. That's on the record on page 131. That claim didn't reference any treatment regarding the cauda equina syndrome. I think that by the language that they presented in the 2021 claim would not lead to a thorough investigation of the renal failure claim, which is what would be required under the court's precedent under RISE or even France. As well as the court's precedent also indicates that any amendments to the claim or the lawsuit has to be closely related to what was originally presented to the agency. Well, it doesn't have to be as tight a connection as relation back in federal pleading, does it? No, but it is akin. I would think it is akin to that because in federal pleading, you look at whether it's in the same transaction or occurrence. I think it's similar to what the amendments that would be allowed under the regulations or what the circuit has declared in RISE is that there has to be some close relation to what was originally put in the amended claim. Well, one difference between relation back in federal court and here is that there's a duty on the agency, on the part of the agency to investigate. And the law says that that investigation should encompass things. In other words, the agency sort of held to find the things that a reasonable investigation would adduce. So that's a little more broad ranging. And I guess the question is where is that line? When you get this 2021 claim in January and it's about the spinal compression, how far does the agency go into inquiring? Well, what are the complicating factors, causes, the drugs taken to treat this? What's happened beforehand? I mean, how deeply do you look? I think the court in RISE has answered my question, which is that has to be sufficient facts to enable a thorough investigation about the agency's potential liability and to conduct some negotiation. Well, I mean, you do see the asymmetry here. The agency is saying, well, we couldn't have investigated this. It wasn't raised. But by God, the plaintiff should have known they had the duty to investigate and find their claims, even though they're not doctors and their actual doctors are telling them different things. Well, the FCC does impose the duty on the libis to be reasonably diligent in presenting their claims. I mean, that's why there is a statute limitation of two years. The Supreme Court in Kubrick, as well as this court in RISE, recognized that this was in order so that the claimant could promptly present his claims to the agency and we could avoid, hopefully, any court congestion and resolve this earlier. And if we don't put that duty on the claimant, and in this case, if we don't impose that duty on the libis to be reasonably diligent, then there is no prompt presentation. As your honor had mentioned, it took the VA two years to review this claim in terms of investigating the medical providers and also hiring an independent medical examiner. And I don't think it would mean furtherance of any prompt presentation of the claim if the VA was just to look through hundreds, if not thousands, of medical records to determine whether they have any type of liability that they should be resolving with the claimant. And your honor, I do also want to think it's important to point out that while the libis are claiming that the urinary incontinence should have triggered an investigation into the renal failure, the 2023 claim, in fact, continued to state that the urinary incontinence was a symptom of the cauda equina diagnosis as well as the back surgery. They said that urinary retention, and this is on the record page 148, and loss of bladder control, are classic signs and symptoms of cauda equina syndrome. This undermines their argument because even in the 2023 claim, they had never amended it to say, actually, we were wrong about the urinary symptoms being tied to the cauda equina. It was instead tied to the kidney issue. No, they continued to pursue in the 2023 claim that the urinary symptoms were classic symptoms of the cauda equina, which I think further undermines their argument that the urinary retention should have given notice to the VA. As well, your honor, the district court, as well as the libis in their brief on page 35, recognize that the urinary retention is not just exclusive to kidney. Not only is it a symptom of the cauda equina diagnosis, but to a range of other illnesses, which I think also further undermines that the VA cannot have just seen a few words in the 2021 claim referring to any urinary issues and state that they were obligated at that point to look at the entire GI tract system and review either the bladder or the kidney. Thus, your honors, I think the record as established by the allegations show that after Mr. Levias was hospitalized in September 2017, the VA began curtailing his medications for their treatment of the VA. By August of 2020, him and his wife were dissatisfied with their treatment of the VA. By April of 2021, Mrs. Levias had told the VA that she was worried about any of the medications further worsening his renal function. It's at that point that they had actual knowledge about the critical facts underlying this claim. Could they have amended their claim, the January 2021 claim, before it was denied? Your honor, may I briefly answer your question?  No. So, yes. After it was denied in January of 2023, they timely filed a... No, no, no. What I'm asking is, so if they knew this in April 2021, could they have amended their January 2021 claim at that time to have us serve it? Yes, your honor. The regulations allow for that. Okay. Thank you. All right. Thank you, ma'am. Ms. Higginbotham. May it please the court, your honor, I have two points on rebuttal. First, the Leviases timely amended their administrative claim to include every medical malpractice allegation that they filed in their federal lawsuit. What? So, you've heard basically this 2017, 2018, August 2020, the medical records are requested and received in the fall of 2020, April 2021, as the government's sort of timeline for when the Leviases knew. When do you contend, what date did they know about the kidney connection with the NSAIDs? No earlier than April of 2021. No, no, no. Tell me when they knew. April of 2021 is the earliest date. So, you agree that when Mrs. Leviase basically expressed the connection with the treatment of the kidney problems and the concern about the drugs, that was enough? When Mr. Leviase in April of 2021 talked to his provider about NSAIDs causing his kidney disease, the first time that happens is April 2021. That is the earliest, and that is after he timely presented an administrative claim for medical malpractice of kidney urinary problems that are related to his kidney function. Under federal law, a claimant has the right to amend a claim at any time for any reason prior to filing their federal lawsuit. Under 38 CFR 14.604C, 28 CFR 14.2C, and 28 CFR 14.9B, the Leviases had the right created by Congress and created by federal agencies to amend their medical malpractice claim prior to filing suit. The government has not pointed to one case in the Fifth Circuit or otherwise that says Leviases could not amend their claim in 2023 to add additional facts and negligence about the government's failure to diagnose and treat his kidney disease. What do you do with this statement from the district court opinion? In February 2020, Mr. Levias was diagnosed with stage 4 chronic kidney disease by a nephrologist and instructed to avoid all NSAIDs. And she cites, I think, the complaint of paragraph 5.32. Your Honor, the court can turn to the record at page 92 and 93 to see that Mr. Levias was surprised to learn he had kidney disease in March of 2020. And he learned about it from a podiatrist, not a nephrologist. Well, I'm just saying Judge Rosenthal, I believe, is citing the plaintiff's complaint. Your Honor, the plaintiff's and their complaint, which is in the record starting, I believe, at page 6, states that the Leviases were shocked to learn in March of 2020 for the first time that he had kidney disease. And even then, they did not know the government was continuing for many more months to continue to give him contraindicated medication and declining to give him medication that could have reversed that kidney disease. Well, but the preceding paragraph in the complaint is the one Judge Jones is going to. It's paragraph 5.32. That's February 7 of 2020. And it quotes, actually the complaint quotes, that the doctor recommends to, quote, avoid NSAIDs and contrast. Yes, Your Honor, and the VA continued to give Mr. Levias NSAIDs. That's what this case is about. That's what the negligence is. Well, no, the case is really about when their duty to investigate, when their duty to actually follow up on these claims. If they were getting contradictory advice from their physicians, maybe they should have gone to get a third opinion or a fourth opinion from someone who would lay it out for them. Your Honor, the FGCA does not require plaintiffs to have a heavy investigatory burden that outweighs the government's own investigation. No, but the plaintiffs know about their own conditions and their own care and the care they're getting and if they're dissatisfied with their care and if this connection is being made in February of 2020, in March of 2020, etc. Your Honor, the connection was not made about NSAIDs. He asked his own doctors in August for the exact cause of his kidney disease and they did not tell him. Well, there may not have been an exact cause, but that doesn't mean that the NSAIDs were not contributing to it and there were breadcrumbs along the way. Well, that was Mr. Levis doing the investigation, asking his VA doctors what caused my kidney disease and they pointed him in a completely different direction as they continued to prescribe him the drugs that were poisoning his kidneys. But the government has completely waived the argument that the Levises had the right to add these claims in 2023. It was unaddressed in the government's brief and they cannot point to a single case that says the Levises did not timely amend following the CFRs and following every decision that does exist on this point. This court in Dickerson v. United States recognized in footnote six that a claim can be amended at any time for any reason and that is what the Levises did. They put the government on complete pre-suit notice as required by the FTCA. Your Honor, I see I'm out of time. We would respectfully ask the court to reverse the district court bill. All right. Thank you very much. Thank you. We will stand in recess until tomorrow at 9 a.m.